UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                      CASE NO. 8:23-cr-00006-MSS-AEP

RYAN HANSEL
    a/k/a "Goat"

### UNITED STATES' SENTENCING MEMORANDUM

The United States files this sentencing memorandum requesting a sentence of 120 months' imprisonment for defendant Ryan Hansel.

### I. FACTUAL BACKGROUND

On June 26, 2022, Pasco Sheriff's deputies went to Ryan Hansel's residence to execute an arrest warrant. Deputies observed Hansel meet with individuals from two different cars. Before the second car left, Hansel was standing in his driveway on a bicycle. Deputies approached Hansel while announcing their presence as law enforcement officers, Hansel fled through his open garage door, slamming the door on the hand of Deputy Andre Damien. Hansel continued to flee out into his backyard. While being pursued by law enforcement, Hansel pulled a black handgun out of the waistband of his pants and threw it on to the roof of his residence. Deputy Damien observed Hansel throw the gun and heard the gun hitting the roof. Hansel then hopped a fence and ended up back in the front yard of his residence. Deputy Anthony Shaffer ordered Hansel to stop and deployed his taser, which immobilized Hansel in the front yard. Hansel was then detained.

A search of Hansel's pocket revealed a plastic bag containing approximately 14.1 grams of a crystal-like substance. Deputy Jackson Zammit retrieved the firearm from the roof of Hansel's residence. The firearm was loaded and contained eight rounds of ammunition with an additional round in the chamber. Hansel had a cell phone in his other pocket which contained drug related conversation with a known co-conspirator, Ethan Ely. On jail calls, Hansel discussed having the "other…you know" on him because he was going somewhere. Hansel talked on calls about "Ely making that [expletive] hot."

Special Agent John Cosentino with the Bureau of Alcohol, Tobacco, and Firearms ("ATF") examined the firearm and ammunition recovered. The firearm recovered was identified as a Smith & Wesson 9mm Luger caliber semiautomatic pistol, model M&P9 Shield, with serial number JEK5623. SA Cosentino determined that the firearm was manufactured in Connecticut and therefore would have to travel in or affect interstate or foreign commerce prior to recovery in Florida. Additionally, SA Cosentino examined one round of Winchester ("WIN") 9mm Luger ammunition, one round of Federal ("FC") 9mm Luger ammunition, and one round of HRTRS 9mm Luger ammunition. Winchester 9mm Luger ammunition was manufactured in Illinois or Mississippi. Federal 9mm Luger ammunition was manufactured in Minnesota, Idaho, Missouri, or Arkansas. HRTRS 9mm Luger ammunition was manufactured in the Czech Republic. These specific rounds recovered from the Hansel's firearm would have to travel in or affect interstate or foreign commerce prior to recovery in Florida.

Trina Do, a Forensic Chemist with the Drug Enforcement Administration ("DEA") tested the crystal-like substance obtained from Hansel. The substance tested yielded positive results for methamphetamine and weighed approximately 14.1 grams with a 100% level of purity.

## II. PROCEDURAL BACKGROUND

On January 5, 2023, a grand jury seated in the Middle District of Florida returned a three-count indictment charging Hansel with one count of unlawful possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(e), one count of possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B), and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Doc. 1. On October 24, 2023, Hansel was found guilty of Count 1 of the Indictment and not guilty as to Count Two. Doc. 48. Due to a not guilty verdict as to Count Two, Count Three was not addressed. Doc. 48.

## III. PRESENTENCE INVESTIGATION REPORT

Probation authored an initial Presentence Investigative Report (PSR) on November 28, 2023. The PSR establishes a total offense level of 33 and a criminal history category VI. Doc. 55 ¶ 8 and 16.

The United States does not have any legal or factual objections to the PSR. The defendant raises four objections:

1. Hansel does not qualify under the Armed Career Criminal Act (ACCA).
2. Hansel is entitled to acceptance of responsibility.

3

3. Hansel did not possess the firearm in relationship to another crime.
4. Hansel was not on probation at the time of the offense.

*Armed Career Criminal Enhancement*

The PSR assess the chapter four enhancement at paragraph 22. After the Supreme Court's decision in *United States v. Wooden*, 142 S. Ct. 1063 (2022), it is the Department of Justice's policy that for the enhancement to apply and not violate the defendant's Sixth Amendment rights, a jury must find, or the defendant must plead to, facts that establish that the defendant's predicate felonies were committed "on occasions different from one another." 18 U.S.C. § 924(e)(1). In *Wooden*, the Supreme Court held that the defendant's prior burglary convictions, committed over the course of one night, were not offenses committed on different occasions with the meaning of ACCA. *Id*. at 1072. In that opinion, the Court stated that the "different occasions inquiry" is "more multifactored in nature" and a "range of circumstances may be relevant to identifying episodes of criminal activity." *Id*. at 1070-71. The Court in *Wooden* specifically declined to address "whether the Sixth Amendment requires that a jury, rather than a judge, resolve whether prior crimes occurred on a single occasion," *Id*. at 1068 n.3.

The Government submits that while *Wooden* does not require a fourth element in regard to the "different occasions" inquiry, it does not change precedent that the classifications of "violent felonies" and "serious drug offenses" are questions of law for a judge, rather than questions of fact for a jury, as the Government submits the "different occasions inquiry" is. See *United States v. Dudley*, 5 F.4th 1249 (11th Cir.

4

2021), *United States v. Jones*, 574 F. 3d 546 (8th Cir. 2009), and *United States v. Moore*, 401 F. 3d 1220 (10th Cir. 2005).

With regards to the finding of separate offenses, the current precedent in the Eleventh Circuit says "for ACCA purposes, district courts, may determine both the existence of prior convictions and the factual nature of those convictions, *including whether they were committed on different occasions*, so long as they limit themselves to *Shepard*-approved documents." *United States v. Longoria*, 874 F.3d 1278, 1283 (11th Cir. 2017) (emphasis in original) (citing *United States v. Weeks*, 711 F.3d 1255, 1259 (11th Cir. 2013)). *Shepard* documents include items such as "charging documents, any plea agreements or colloquies, explicit factual findings to which the defendant assented, or some comparable judicial record of this information." *Weeks*, 711 F.3d at 1259.

The Supreme Court held that a fact that increases a mandatory sentence must be submitted to a jury and proven beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 114–16 (2013). The Supreme Court has also held that a penalty provision that that authorizes a court to increase the sentence for a recidivist does not need to be alleged in the indictment or submitted to the jury. *Almendarez-Torres v. United States*, 523 U.S. 224, 226 (1989). The Eleventh Circuit has repeatedly held that the fact of a prior conviction does not need to be alleged in an indictment or proven to a jury for a sentence enhancement to apply. *United States v. Sparks*, 806 F.3d 1323, 1350 (11th Cir. 2015). In the Armed Career Criminal context, the Eleventh Circuit

has "expressly rejected the notion that the ACCA's different-occasions determination, unlike the mere fact of a prior conviction, must be submitted to a jury and proven beyond a reasonable doubt." *United States v. Weeks,* 711 F.3d 1255, 1259 (11th Cir. 2013).

The United States directs the Court to *United States v. Brown*, case number 8:22-cr-64-SDM-MRM. In *Brown*, at the sentencing hearing on that case, Judge Merryday rejected the Government's argument that a fourth element now needed to be proved or pleaded to, and the Court sentenced the Defendant as an Armed Career Criminal. Doc. 82. Judge Merryday ruled that *Wooden* does not require a jury to find the multiple occasions component of ACCA. (See Attachment A pp15-24, transcript of sentencing in *United States v. Brown*).

The United States also directs the Court to *United States v. Dunbar*, case number 8:22-cr-75-MSS-JSS. At a hearing on a change of plea in that case, this Court was ready to accept the Defendant's change of plea to only 3 of the elements before the Defendant moved to continue for another reason. The minutes of that case can be found at Document 117, though they do not reflect the parties' arguments or the Court's decision on the issue.

The United States points the Court to United States v. *Aunyis Cherry*, 8:21-cr-187-KKM-JSS. Cherry was convicted at trial under a stipulation that he was a convicted felon. Between conviction and sentencing, the *Wooden* opinion was issued and the Department's position established. Judge Mizelle ruled that the Court determined ACCA qualification in accordance with the established case law in the

6

Eleventh Circuit. See Attachment B pp 14-17, transcript of sentencing in *United States v. Auynis Cherry*).

Most recently, Judge Covington offered her opinion that the ACCA designation is one determined by the court during a sentencing hearing in compliance with the current Eleventh Circuit holdings, notwithstanding the position of the parties that a jury needed to make the determination. *United States v. Joseph Walker*, 8:22-cr-188-VMC-AAS. During this sentencing Judge Covington overruled the parties' objections and said she would find the defendant qualified under ACCA, but would allow the defendant to withdraw his plea. 8:22-cr-188-VMC-AAS, Doc. 148.

In the instant case, the United States sought to procedurally submit the issue to the jury in compliance with the Department's position. The Court declined to admit the *Shepard*-approved documents for the jury's consideration. Presently, the defendant does not dispute his qualifying convictions contained in paragraphs 32, 33, and 34 of the initial PSR. The defendant qualifies for the enhancement as an armed career criminal, but because a jury did not render a verdict on the issue the United States does not argue for this enhancement.

*Acceptance of responsibility*

Acceptance of responsibility is given when the defendant clearly demonstrates acceptance of responsibility. USSG § 3E1.1. Some things the Court should consider are if the defendant voluntarily surrendered to authorities promptly after the crime and the timeliness of the acceptance. While trial does not immediately foreclose

7

giving acceptance of responsibility in all cases, the "rare situations" where post-trial acceptance is given are instances where the accused goes to trial to preserve issues not related to factual guilt and these instances are assessed primarily on pre-trial statements or conduct. USSG § 3E1.1 Application Notes 1 and 2.

Hansel did not plead guilty to any counts in advance of trial. At no time did the defendant accept responsibility, in fact he acted like he knew nothing-. Hansel did not voluntarily surrender promptly after the commission, he was tazed. During opening statements and in closing arguments, attorneys for Hansel said they weren't contesting that he possessed the firearm. The statements of attorneys not disputing an element of one count in their opening and closing is not a clear demonstration by the *defendant* of anything.

In addition, Hansel was charged with committing felonies on occasions different from one another. Doc. 1. Hansel did not admit to this portion of the charge at trial, though he does not challenge the convictions now in the PSR. Hansel would not stipulate to the nexus element of the crime at trial requiring testimony of a witness. There are no pre-trial statements or conduct which would make this a "rare exception," nor any indication that Hansel "clearly" and timely accepted responsibility. The arguments and effective trial strategy of Hansel's counsel does not constitute acceptance of responsibility. The *defendant* has never accepted responsibility.

*Firearm possession in connection with another felony*

The possession of a firearm or ammunition in connection to another felony demands a four-level enhancement. USSG § 2K2.1 (b)(6)(B). The enhancement applies where the firearm facilitated or had the potential of facilitating another felony. USSG § 2K2.1, Application Note 14 (A). Where the felony is a drug trafficking crime, the Court should look to the proximity of the drugs. USSG § 2K2.1, Application Note 14 (B). This enhancement applies whether the violation of state or federal law was brought as a charge, or the conviction obtained. USSG § 2K2.1, Application Note 14 (C).

In this case, Hansel was seen meeting with people for short intervals which was consistent with conducting drug deals. Hansel was fled from law enforcement who located 14 grams of methamphetamine in his pocket. At trial witnesses testified that the quantity and packaging was consistent with distribution, noting a user quantity was closer to one gram in a small ring baggie or corner of a bag. A witness also testified to the role a firearm plays to protect drug deals and their products and proceeds.

The connection between firearms and narcotics is deeply established through case law. The Eleventh Circuit Court of Appeals concluded that "numerous cases have recognized that guns are a tool of the drug trade and that there is a frequent and overpowering connection between the use of firearms and narcotics traffic." *United States v. Cruz*, 805 F.2d 1464, 1474 (11th Cir. 1986). The connection is so deep that

even co-conspirators can be held accountable for the firearm possession of a co-conspirator.

Here, Hansel possessed more than double the quantity required by federal law under 18 U.S.C. § 841(b)(1)(B). Additionally, Hansel was initially charged in state court with a "drug trafficking" crime under a violation of Florida State Statute § 893.135, for possessing more than 14 grams of methamphetamine. In *United States v. Conage*, the Eleventh Circuit discussed Florida's "three-tiered" drug offense scheme. 976 F.3d 1244, 1254 (11th Cir. 2020). The highest tier is drug trafficking, the felony Hansel committed under Florida State law in this case, as in a tier above "intent to distribute." *Id* at 1254. The court in *Conage* observed an "intent to distribute" based on the threshold quantities of the trafficking charge.

Additionally, according to the defendant himself, he has not consumed methamphetamine since 2019. Initial PSR ¶ 74. All the facts support that Hansel possessed the methamphetamine with the intent to distribute the substance. The PSR correctly assessed the four-levels under USSG § 2K2.1 (b)(6)(B).

*Status as probationer*

On March 1, 2011, Hansel was sentenced to a term of three years of probation. Initial PSR ¶ 35. On September 3, 2011, the Court issued a violation of probation warrant. In New Jersey, when a warrant for violation of probation is filed before the termination of the probation period, the probationary period is tolled. *State v. Nellom*, 178 N.J. 192, 202 (S. Ct. New Jersey, 2003). While the defendant argues in his objection that the "probation period has expired" that is legally and factually

10

inaccurate. Hansel was on probation and remains under the jurisdiction of the New Jersey Court. The criminal history is correctly calculated as a category VI.

## V. SENTENCING FACTORS UNDER 3553(a)

The United States is requesting a sentence of 120 months' imprisonment. The circumstances of the offense and the defendant's criminal history support this sentence. *See* 18 U.S.C. § 3553(a)(1). A sentence of 120 months' imprisonment will also serve to promote the defendant's respect for the law, deter criminal conduct, and protect the community. See 18 U.S.C. § 3553(a).

A district court must consider all the listed factors in 18 U.S.C. § 3553(a), it however, is not required to give all of the factors equal weight. *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009). A district court is permitted to attach greater weight to certain factors over others. *Id*. (citing *Gall v. United States*, 552 U.S. 38, 57 (2007). The decision about how much weight is assigned to a particular factor is "committed to the sound discretion of the district court." *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008) (internal citation omitted).

The nature and circumstances of this case show a drug dealer recently released from prison engaging in suspected drug deals before deputies attempt to arrest him for a violent crime on a law enforcement officer. Hansel flees from the uniformed deputies, injuring one during his flight, before throwing a loaded firearm on the roof. When he was apprehended, Hansel had 14 grams of methamphetamine and a phone which later had messages about narcotics from a known co-conspirator.

Hansel's criminal history demonstrates a repeated pattern of disregard for the law dating back to age 12. At age 12, Hansel pled guilty to lewd or lascivious exhibition. At age 16, Hansel transitioned to committing grand thefts and was ultimately charged as an adult for a case involving burglary of a structure and grand theft in 2007. As an adult, Hansel was in continuous contact with law enforcement with most of his offenses being related to the sale and possession of narcotics. Hansel himself acknowledged in the PSR he has not used methamphetamine since 2019, leaving only distribution as an explanation for the methamphetamine he had during this crime.

Hansel's conduct also became increasingly violent during a burglary offense in 2015 where Hansel threatened the victim of the burglary with a knife, and a domestic battery from 2020. More recently, Hansel continued this pattern of violence and disregard for the safety of others as evidenced by his pending State charges for aggravated assault on a law enforcement officer and fleeing or eluding on June 24, 2022, around five months after being released from prison.

Hansel violated probation in every case in which he was placed on supervision. In 2017, Hansel violated felony probation by committing new felonies. Hansel has also been incarcerated in the Florida Department of Corrections three times since 2012. Hansel was incarcerated from December 5, 2012 to April 5, 2014, February 13, 2018 to June 16, 2019, and from April 22, 2021 to January 27, 2022. While incarcerated, Hansel received disciplinary actions for refusing to submit to a drug test, disrespect to officials, battery on an inmate, and disobeying regulations.

12

Hansel's personal characteristics also warrant a sentence of 120 months. Hansel is as a gang member of the American Nazis. The Defendant's mother, Debra Cordell, confirmed that he is affiliated with a gang but unsure the name or circumstances. Hansel has numerous tattoos including "Mein Kampf" across his back, "2316" (commonly referring to "White Power"), and a swastika on his left leg. Hansel self-report drug use ceasing in 2019. In the PSR, Hansel talks about witnessing gang violence and drug transactions within the "white supremacist area" of Moon Lake. This is an interesting point to make because Hansel is a participant in those things rather than merely witnessing them, which make him a danger to the community. Hansel has minimal, unverified employment and can benefit from occupational training in the bureau of prisons.

Hansel's criminal conduct both past and present demonstrates his complete and total disregard for the law and the need for a sentence that protects the community and provides just punishment for the offense. The procedural presentation related to the armed career criminal act leave the United States unable to seek an appropriate sentence of twenty years, though that sentence would be sufficient and not greater than necessary to achieve the objections of 18 U.S.C. § 3553. Instead, the United States asks for a sentence of 120 months because it is the only available sentence which will protect the community and attempt to instill respect for the law as well as seek to deter the reckless and dangerous actions taken by Ryan Hansel.

## **VI. CONCLUSION**

For all these reasons, the United States respectfully submits that a sentence of 120 months' imprisonment is reasonable, fair, and reflects the directives set forth in 18 U.S.C. § 3553.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: */s/ Samantha E. Beckman*
Samantha E. Beckman
Assistant United States Attorney
Florida Bar No. 102533
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Samantha.beckman@usdoj.gov

U.S. v. HANSEL                              Case No. 8:23-cr-00006-MSS-AEP

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Sara Mieczkowski, Esq.

                                                       By:   */s/ Samantha E. Beckman*
                                                                  Samantha E. Beckman
                                                                  Assistant United States Attorney
                                                                 Florida Bar No. 102533
                                                                400 N. Tampa Street, Suite 3200
                                                                Tampa, Florida 33602-4798
                                                                Telephone:  (813) 274-6000
                                                                Facsimile:   (813) 274-6358
                                                                E-mail: Samantha.beckman@usdoj.gov